SUPERIOR COURT 
 
 COMMONWEALTH v. KEVIN SANTIAGO

 
 Docket:
 1981CR00098
 
 
 Dates:
 August 23, 2021
 
 
 Present:
 Kenneth W. Salinger Justice of the Superior Court
 
 
 County:
 MIDDLESEX, ss.
 

 
 Keywords:
 FINDINGS AS TO DEFENDANT’S LACK OF COMPETENCE, AND MEMORANDUM AND ORDER ALLOWING DEFENDANT’S MOTION TO DISMISS IN THE INTEREST OF JUSTICE

 
 

 
Kevin Santiago is not competent to stand trial and never will be. Mr. Santiago is accused of repeatedly shooting someone who was sitting in a car and then walking away with their cell phone. The victim lived. Santiago has been held without bail for almost three years, since he was first charged in district court. But Santiago suffers from severe intellectual disabilities and resulting cognitive deficits. They prevent him from understanding these proceedings, consulting meaningly with his lawyer, and assisting in his defense, which means that he is not competent to stand trial. Santiago’s condition is permanent and untreatable, which means that he can never be tried.
Defense counsel has asked the Court to dismiss the charges in this case in the interest of justice, because Santiago is unlikely ever to become competent.
The Commonwealth concedes that Santiago is not competent to stand trial, has made no progress toward achieving competency, and is not likely ever to become competent. It nonetheless asks the Court to deny the motion to dismiss and to keep Santiago in custody, waiting for a trial that can never happen.
What the Commonwealth asks the Court to do is unlawful. Continuing to hold Mr. Santiago in custody would violate the constitutional requirements of due process. Since Santiago must be released by law whether the charges against him remain pending or not, nothing would be accomplished by keeping these charges open without resolution for years. The Court will therefore exercise its discretion under G.L. c. 123, § 16(f), to dismiss the charges in this case, without prejudice, in the interest of justice.
1. Legal Background.
1.1. Competence to Stand Trial. It would violate the requirements of due process under the Massachusetts Declaration of Rights and under the United

-1-

States Constitution to try, convict, or sentence someone on criminal charges if they are not legally competent to participate in their defense at trial. Commonwealth v. Companonio, 445 Mass. 39, 48 (2005); Cooper v. Oklahoma,    517 U.S. 348, 354 (1996). Where the issue of competency arises before trial, the Commonwealth has “the burden of proving, by a preponderance of the evidence, that [the] defendant is competent to stand trial.” Companonio, supra, quoting Commonwealth v. Serino, 436 Mass. 408, 414 (2002).
Whether a defendant is competent to stand trial depends on their “ ‘functional abilities’ rather than ‘the presence or absence of any particular psychiatric diagnosis.’ ” Commonwealth v. Gibson, 474 Mass. 726, 737 (2016), quoting Commonwealth v. Goodreau, 442 Mass. 341, 350 (2004).
“Under both the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, ‘[i]t has long been accepted that a person whose mental condition is such that he [or she] lacks the capacity to understand the nature and object of the proceedings against him [or her], to consult with counsel, and to assist in preparing his [or her] defense may not be subjected to a trial’ ” (bracketed material in original). Commonwealth v. Chatman, 473 Mass. 840, 846 (2016), quoting Commonwealth v. Brown, 449 Mass. 747, 759 (2007), quoting in turn Drope v. Missouri, 420 U.S. 152, 171 (1975).
A criminal defendant who lacks these functional abilities is not competent to stand trial. Commonwealth v. L’Abbe, 421 Mass. 262, 266 (1995). It is not enough for a defendant to have a minimally sufficient understanding of the nature of the proceedings. The defendant must also have “the capacity to consult with his lawyer and to assist in preparing his defense.” Id. That is because someone who lacks these abilities cannot meaningfully exercise “those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one’s own behalf or to remain silent without penalty for doing so.” Cooper v. Oklahoma, 517 U.S. 348, 354 (1996), quoting Riggins v. Nevada, 504 U.S. 127, 139–40 (1992) (Kennedy, J., concurring in the judgment).
1.2. Due Process Limits on Holding Incompetent Defendants in Custody. Indefinite pretrial commitment of a criminal defendant who cannot be tried because they are incompetent violates the constitutional requirement of due process. See Jackson v. Indiana, 406 U.S. 715 (1972). These constitutional standards apply even where, as here, a defendant has been held without bail

-2-

under G.L. c. 276, § 58A, on grounds of dangerousness. Abbott A. v. Commonwealth, 458 Mass. 24, 37 (2010).
Due process imposes three distinct limitations on holding in custody an incompetent criminal defendant who has not been convicted and must still therefore presumed to be innocent. Id.
“First, an incompetent defendant or juvenile may not be held in criminal custody awaiting trial ‘more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain [competency] in the foreseeable future.’ ” Abbott A., 458 Mass. 37, quoting Jackson, 406 U.S. at 738. In other words, a State is “entitled to hold a person for being incompetent to stand trial only long enough to determine if he could be cured and become competent.”  Foucha v. Louisiana, 504 U.S. 71, 79 (1992).   “To satisfy this due process requirement, … a judge must make a searching inquiry into the likelihood that a defendant or juvenile will become legally competent in the foreseeable future.” Abbott A., supra.
Second, a defendant who is expected to achieve competence in the foreseeable future cannot continue to be held unless he or she has in fact “made progress toward achieving competence.” Abbott A., 458 Mass. at 39.
Third, even where these two requirements are met, “due process requires that an incompetent defendant or juvenile not be detained under § 58A for an unreasonable period of time.” 458 Mass. at 39.[1] “Pretrial detention under § 58A was intended to be short lived, ending on the conclusion of a speedy trial.” Abbott A., 458 Mass. at 40.
If continued pre-trial detention of a criminal defendant would violate any of these due process requirements—because the defendant has been held longer than reasonably necessary to determine his competence, or the defendant has not been making progress toward achieving competency, or the detention has become unreasonable in duration—then the Commonwealth must “either move for civil commitment under G.L. c. 123, § 8(d), and prove the individual’s

----------------------------------------

[1] “This due process limitation on the duration of an incompetent defendant’s pretrial detention … requires the release of the defendant from criminal pretrial detention but does not require dismissal of the underlying charges.” Id. at 39 n.16.

-3-

dangerousness by the more demanding reasonable doubt standard, or release the individual on bail.” Abbott A., 458 Mass. at 40–41.[2]
1.3. Due Process Limits on Keeping Charges Pending. In addition, if a defendant is not competent to stand trial and “will never become competent, allowing charges that can never be resolved at a trial to remain pending indefinitely is inconsistent with his right to substantive due process.” Sharris v. Commonwealth, 480 Mass. 586, 601–602 (2018). “[A] defendant’s liberty interest may be restricted simply by the pendency of criminal charges, even where the defendant is not held in custody.” Id. at 597. Even where a criminal defendant is not detained awaiting trial, pending criminal charges may subject a defendant to public scorn, limit where he or she can live or work or obtain medical care, and curtail the defendant’s personal activities. See id. at 595, 597. Thus, holding criminal charges open indefinitely for years against an incompetent defendant who will never be able to hold the Commonwealth to its burden of proving guilt beyond a reasonable doubt would violate such a defendant’s “fundamental liberty interest.” See id. at 601–602.
2. Procedural Background. Mr. Santiago was first arraigned in the district court where he was held without bail under G.L. c. 276, § 58A, starting November 6, 2018. The court send Santiago to Bridgewater State Hospital for an evaluation of whether he was competent to stand trial.
A Bridgewater clinician determined in December 2018 that Santiago suffers from chronic and severe intellectual disabilities and cognitive deficits that were probably caused by neurological impairment at birth. They found that these disabilities and deficits were pervasive, permanent, could not be treated with medication or otherwise, and rendered Santiago incompetent to stand trial. This clinician noted that another Bridgewater clinician had evaluated Santiago in September 2014, May 2015, and February 2016, finding each time that Santiago was not competent to stand trial and that there was no way for him to be made competent.
Mr. Santiago was indicted by a grand jury on March 12, 2019, on charges of armed assault with intent to murder, armed robbery, assault and battery with

-------------------------------------------

[2]   “[A] court may only commit an individual pursuant to G. L. c. 123, §§ 7 and 8, if it finds beyond a reasonable doubt that a person has a mental illness, that his or her discharge would create an imminent likelihood of serious harm, and that there is no less restrictive alternative to the continued involuntary hospitalization.” Massachusetts Gen. Hosp. v. C.R., 484 Mass. 472, 482 n.8 (2020).

-4-

a dangerous weapon causing serious bodily injury, attempted assault and battery with a firearm (apparently because some shots missed), and illegal possession of a loaded firearm. He was arraigned in the Superior Court on April 11, 2019, and was again held without bail under G.L. c. 276 § 58A.
In December 2019, the court (Tuttman, J.) found, apparently based on the December 2018 Bridgewater evaluation, that Mr. Santiago was not competent and had not been competent at any time since he had been arraigned in the Superior Court. The Commonwealth assented to those findings. At the same time, the Commonwealth asked that the court to have Santiago evaluated for competency a second time. The court did so.
A court clinician determined in January 2020 that Santiago was still not competent to stand trial and again found that he never will become competent. They explained that, because of his permanent and severe intellectual disabilities and cognitive deficits, Santiago cannot factually and rationally understand the proceedings against him, cannot consult with his attorney with a reasonable degree of rational understanding, and is therefore not competent to be tried. This clinician reiterated that Santiago’s incompetence is permanent and untreatable.
Defense counsel filed two motions (in March 2020 and again in January 2021) to have Mr. Santiago released on the ground that the COVID-19 pandemic was a change in circumstances that justified releasing him from custody. Neither motion argued that Santiago should be released because he was not competent and never would be competent to stand trial. Both motions were denied.
In July 2021, defense counsel filed the pending motion to dismiss this action in the interests of justice as allowed under G.L. c. 123, § 6(f).
3. Findings of Fact. The Court credits the unchallenged findings, opinions, and conclusions about Mr. Santiago’s lack of competence to stand trial in December 2018 by Dr. Sara Laniado and in January 2021 by Dr. Andrea Buonaugurio. The Court summarizes and adopts the key findings and conclusions by these clinicians as follows.
Clinicians evaluated Mr. Santiago’s competence to stand trial in September 2014, May 2015, February 2016, November 2018, December 2018, and January 2020. Each time they found that Santiago was not competent to stand trial and that there was no way for him to be made competent. The Court adopts and agrees with all of these conclusions.

-5-

Mr. Santiago suffered extreme oxygen deprivation at birth that caused him to suffer serious and permanent brain injury. As a result, he has significant deficits in cognitive abilities and adaptive skills; he has intellectual disability as well as cognitive impairment. Testing in 2016 determined that Santiago’s general cognitive ability is in the third percentile rank on a test of nonverbal intelligence, meaning that 97 percent of people his age perform better than Santiago on such measures.
Santiago communicates in a childlike manner, speaking in simple phrases with little detail or elaboration. He often seems confused when responding to questions. Santiago’s memory is very poor; he is unable to recall information from his recent or his remote past, and quickly forgot information explained to him by an evaluating clinician.
As a result of his intellectual and cognitive deficits, Mr. Santiago does not understand the charges against him, does not understand what it means to plead guilty to criminal charges, and has a poor understanding of the trial participants and process. In sum, Santiago has little to no factual understanding of the proceedings against him. In addition, Santiago cannot engage in a collaborative discussion about his case, does not understand his relationship with his attorney, cannot grasp the adversarial nature of the courtroom, is typically confused while in court and relies upon others to make decisions for him. In sum, Santiago has no ability to consult with and assist his attorney in preparing his defense.
The Court agrees with all clinicians who have evaluated Mr. Santiago that he is not competent to stand trial and can never become competent. It adopts the findings by Dr. Laniado that:
Mr. Santiago’s cognitive deficits are pervasive and chronic in nature; that are likely a function of neurologic impairment at birth. They are not amenable to pharmacological treatment or ongoing hospitalization.
… [I]t is unlikely he [can] be restored to competency in the future. If anything, his current deficits may worsen as a function of emotional distress related to his legal situation and being removed from his caretakers and supports.
4. Analysis. The Court will allow the motion by Mr. Santiago seeking dismissal of the charges against him without prejudice, as allowed by statute, because there is essentially no chance that he will ever become competent to stand trial. The Court finds there is no chance that Mr. Santiago could become competent

-6-

in the foreseeable future, or at any time before these charges would have to be dismissed by law. It concludes that the pending indictments should therefore be dismissed without prejudice in the interest of justice pursuant to G.L. c. 123, § 16(f). See Commonwealth v. Calvaire, 476 Mass. 242, 247-248 (2017) (citing with approval dismissal in Commonwealth v. Guinta, Norfolk Sup. Ct. No. 2004- 00088, 28 Mass. L. Rptr. 501, 2011 WL 3480959 (Mar. 31, 2011) (Sanders, J.)); see also Commonwealth v. Turner, Suffolk Sup. Ct. No. 1584CR10008, 35 Mass. L. Rptr. 225, 2018 WL 4096110 (Aug. 27, 2018) (Salinger, J.).
4.1. The Statutory Framework. Under Massachusetts law, criminal charges against a defendant who is found not competent to stand trial must be dismissed no later than the latest date he could become eligible for parole if he was convicted of the most serious crime charged and sentenced to the maximum possible sentence for that crime. See G.L. c. 123, § 16(f); Foss v. Commonwealth, 437 Mass. 584, 591 (2002). “Under the statute, parole eligibility ‘shall be regarded as [available on the final date of] one half of the maximum … potential sentence.” Calvaire, 476 Mass. at 244, quoting § 16(f).
The charges against Santiago must therefore be dismissed on April 11, 2044, if he does not become competent to stand trial by then.[3] The Court finds that there is no substantial probability that Santiago will become competent in the foreseeable future or at any time between now and April 2044.
In addition, however, the Legislature has authorized judges to dismiss charges against a criminal defendant before that outside date where doing so would be “in the interest of justice.” G.L. c. 123, § 16(f). Under this “safety valve,” the court “may consider factors that are not relevant to the statutory computation” of the maximum time that charges may remain pending against an incompetent defendant. Calvaire, 476 Mass. at 247. For example, “[u]se of the safety valve

-------------------------------------

[3]   For a felony with a maximum sentence of life in prison, where it is impossible to calculate one-half the maximum sentence, § 16(f) requires dismissal no later than the last date the defendant could be eligible for parole if convicted and given a life sentence. Mr. Santiago could receive a life sentence if convicted of armed robbery, see G.L. c. 265, § 17, and his parole eligibility date could be as long as 25 years, see G.L. c. 279, § 24 (judge may set parole eligibility for life term at anywhere between 15 and 25 years). Since Santiago was arraigned on April 11, 2019, the statutory maximum period for keeping these charges pending if Santiago remains incompetent would be twenty-five years ending April 11, 2044.

-7-

may be warranted in a case where … the defendant’s chances of being restored to competency are slim.” Id.
4.2. Unlawful to Keep Defendant in Custody. The Commonwealth argues that dismissal without prejudice under § 16(f) would not be in the interest of justice because Mr. Santiago is dangerous, and that therefore this action should be left open so that Santiago can be kept confined in pre-trial detention under § 58A.
It would violate due process to do as the Commonwealth requests and continue to hold Mr. Santiago without bail. We know that Santiago is not competent to stand trial; no further evaluation is needed. And there is no substantial probability that Santiago will become competent in the foreseeable future. Nor has Santiago made any progress toward achieving competency. In any case, the detention of Mr. Santiago for almost three years has become unreasonably long. By law, therefore, the Court must release Santiago from custody whether or not it dismisses the pending charges. See Abbott A., 458 Mass. at 37–41, discussed in section 1.2, above.
Since the law requires that Santiago be released in any case, the Commonwealth’s desire to keep him in custody without proving his guilt beyond a reasonable doubt cannot justify keeping this action alive.
It  is  troubling  that  the  Commonwealth  has  asked  the  Court  to  keep   Mr. Santiago in custody, apparently without realizing or understanding that it was asking the Court to violate the law. The Commonwealth conceded at the recent hearing that Santiago is not competent to stand trial now, it is unlikely he will become competent in the foreseeable future, there is no evidence that he has made any progress toward becoming competent, and the Commonwealth has no reason to believe that Santiago ever will be competent to stand trial. The Commonwealth should know that, under Abbott A., the continued detention of such a permanently incompetent defendant is unlawful.
And it is even more troubling that the Commonwealth keeps making this argument, seeking time after time to hold permanently incompetent defendants in custody before trial even though Abbott A. holds that doing so is unconstitutional.[4] Seeking to maintain a criminal case against a defendant who

---------------------------------------------

[4] See “Findings as to Defendant’s Lack of Competence, and Memorandum and Order Denying Commonwealth’s Motion to Reinstate Detention and Allowing Defendant’s Motion to Dismiss All Charges in the Interest of Justice,” Commonwealth v. Gonzalez, Middlesex Sup. Ct. No. 1681CR00491 (Sept. 28, 2020) (Salinger, J.); “Memorandum of Law, Findings of Fact, and Order Allowing Defendant’s Fourth Motion to Dismiss in the Interests of Justice for Permanent Lack of Competence,” Commonwealth v. Turner, Suffolk Sup. Ct. No. 1584CR10008, 35 Mass. L. Rptr. 225, 2018 WL 4096110 (Aug. 27, 2018) (Salinger, J.).

-8-

will never be competent to stand trial, in an effort to keep the defendant in unlawful pre-trial custody, is not consistent with prosecutors’ solemn obligation to follow the law. While prosecutors “may strike hard blows,” they are “not at liberty to strike foul ones;” prosecutors have a “duty to refrain from improper methods calculated to produce a wrongful conviction” or other wrongful result. See Commonwealth v. Keo, 467 Mass. 24, 36 (2014), quoting Berger v. United States, 295 U.S. 78, 88 (1935). “Prosecutors have a duty to do justice, not to win cases.” Commonwealth v. Marinho, 464 Mass. 115, 138 n.7 (2013) (Duffly, J., concurring in part); accord, e.g., Commonwealth v. Dean-Ganek, 461 Mass. 305, 314 n.14 (2012); Commonwealth v. Shelley, 374 Mass. 466, 472 (1978); see also Mass. R. Prof. Conduct 3.8 comment [1], 426 Mass. 1397 (1998) (“A prosecutor has the responsibility of a minister of justice, and not simply that of an advocate”).
Since the Commonwealth concedes that Mr. Santiago is not competent to stand trial and unlikely ever to become competent, it should not be opposing dismissal of the charges against him in an effort to prolong his unlawful pre- trial detention. In the future, if the Commonwealth learns that a criminal defendant being held in pre-trial detention will likely never be competent to stand trial, it should promptly bring that fact to the court’s attention and seek immediate release of the defendant, as required by law.
4.3. Dismissal in the Interest of Justice. The Commonwealth cannot point to any other reason why the charges against Mr. Santiago should be left open even though he will most certainly never become competent to stand trial. The Commonwealth has made no attempt to challenge or refute the conclusions by multiple qualified clinicians that Mr. Santiago will never become competent. The Court credits those undisputed conclusions. Under these circumstances, keeping the pending charges alive indefinitely would appear to violate the constitutional requirements of due process. See  Sharris  v.  Commonwealth,  480 Mass. 586, 601–602 (2018).
Since Mr. Santiago has been incompetent to stand trial for years, and there is no reason to believe that he can ever become or made competent, the Court

-9-

concludes that the pending indictments should now be dismissed without prejudice in the interest of justice. See Calvaire, 476 Mass. at 247-248.
ORDER
Defendant’s motion to dismiss the charges in this case without prejudice in the interest of justice under G.L. c. 123, § 6(f), is allowed because Defendant is not competent to stand trial and it is highly unlikely that he will ever become competent. The indictments in this case are hereby dismissed without prejudice. The mittimus ordering that Defendant be held in custody pending trial shall be withdrawn immediately.

@/s/Kenneth W. Salinger Justice of the Superior Court

@August 23, 2021

-10-

xxz